```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
   CHRISTINA GONZALEZ,                                      :
                                       Plaintiff,           :
                                                            :
                    -against-                               :
                                                            :
   CITY OF NEW YORK, et al.,                                :
                                       Defendants.          :
                                                            :
------------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/9/15
```

14 Civ. 7721 (LGS)

<u>OPINION AND ORDER</u>

LORNA G. SCHOFIELD, District Judge:

Plaintiff Christina Gonzalez commenced this action asserting violations of her First and Fourth Amendment rights based on her arrest on four different occasions. Defendants are the City of New York (the "City"), ten individually named New York Police Department ("NYPD") officers and seven unnamed police officers. Defendants move for partial dismissal of the First Amended Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c).[1] For the following reasons, the motion is granted in part and denied in part.

**I.    BACKGROUND**

Unless otherwise noted, the following is based on allegations in the Complaint and the two video clips attached to and incorporated in the Complaint. As required for the present motion, all factual allegations in the Complaint are assumed to be true. *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

Plaintiff's first arrest at issue occurred on September 24, 2011, around 2:00 p.m. (the

---

[1] The Notice of Motion states that this motion is brought by the City pursuant to Rules 12(b)(6) and 12(c), and the memorandum of law in support of this motion states it is brought by the City and eight of the ten individually named Defendants pursuant to Rule 12(c) and did not include Defendants Richard Hall or Lissett Nieves. As some of the arguments in support of this motion appear to apply to all individual Defendants, this motion is construed as a motion by all Defendants, including Hall, Dionis Bravo and Lissett Nieves, who have not answered.

"September 2011 Incident") when Plaintiff was participating in a public protest. While at the protest, Plaintiff videotaped the conduct of police officers. Plaintiff complied with orders from the NYPD and did not obstruct or interfere with police officers. Nevertheless, Defendant Doe 1 ordered patrol officers to arrest Plaintiff. Defendant Doe 2 seized Plaintiff by the back of her sports bra as she was moving away from him.[2]

Defendants Doe 2 and Officer Bravo arrested Plaintiff and placed her in wrist restraints under the supervision of Defendant Sergeant Colleen Walsh. The restraints were allowed to remain in place for fifteen minutes until Plaintiff's protests that they were overly tight led the arresting officers to loosen the restraints. Defendants Officer Emmanuel Collado and Doe 4 attempted to push Plaintiff down towards the pavement. Defendants Hall, Collado, Walsh, Bravo and Does 1, 2 and 4 placed Plaintiff in an unventilated and overheated van for five to six hours without food, water or access to a restroom. The resulting criminal action against Plaintiff terminated in Plaintiff's favor without a conviction.

The second arrest at issue occurred on January 1, 2012, around 1:30 a.m. during a public protest (the "January 2012 Incident"). Plaintiff and other protesters were marching on a public sidewalk in compliance with police orders. The NYPD then began arresting protestors without cause. Defendants David Gonzalez and Eugene Mascari, supervised by Defendant Sergeant Adam Kaszovitz, "slammed" Plaintiff against a wall, placed her in restraints and arrested her. Plaintiff was released six hours after her arrest, and the subsequent criminal action terminated in Plaintiff's favor without a conviction.

---

[2] The video attached to the Complaint shows that Plaintiff was wearing only a black sports bra and purple pants.

The third arrest at issue occurred on June 17, 2012, also during a public protest (the "June 2012 Incident"). During the peaceful protest, Plaintiff videotaped police officers arresting another demonstrator with what Plaintiff believes was excessive force. Defendants Officer Angela Nieves and Does 5 through 8, under the supervision of Defendant Sergeant Lissett Nieves, arrested Plaintiff without cause. Defendants Angela Nieves and Does 5 through 8 placed Plaintiff in wrist restraints for approximately thirty-five minutes. The subsequent criminal action terminated in Plaintiff's favor without a conviction.

On July 31, 2012, Plaintiff was arrested a fourth time while videotaping the conduct of Defendant Officer Medina (the "July 2012 Incident"). Although the Complaint does not indicate why Plaintiff was recording Officer Medina, Plaintiff's opposition memorandum asserts that Plaintiff was observing and recording "a problematic traffic stop." Officer Medina ordered Plaintiff to stop videotaping and arrested Plaintiff. Plaintiff's seizure and arrest resulted in damage to a poster in her possession. Less than an hour later, Plaintiff was released without any charges.

For all four arrests, the Complaint asserts that Defendants' actions caused Plaintiff to "suffer discomfort, physical and emotional pain and distress, including humiliation, fear, frustration, and anger."

## II. LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all well pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Littlejohn v. City of New York,* 795 F.3d 297, 306 (2d Cir. 2015). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Rule 12(c) permits parties to move for judgment on the pleadings after an answer has been filed. *See* Fed. R. Civ. P. 12(c). Rule 12(c) motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss. *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).

### III.   DISCUSSION

#### A.   Statute of Limitations

The claims against Defendants Collado, Hall, Walsh and Kaszovitz are dismissed as time barred. Section 1983 actions filed in New York are "subject to a three-year statute of limitations," *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013), which begins to accrue "when the plaintiff knows or has reason to know of the harm," *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).

Based on the allegations in the Complaint, the statute of limitations required the filing of claims against Collado, Hall and Walsh by September 24, 2014, and against Kaszovitz by January 1, 2015. Although Plaintiff commenced this action on September 24, 2014, the original complaint did not name Collado, Hall, Walsh or Kaszovitz as Defendants. They were added more than four months later in the First Amended Complaint, filed on February 10, 2015. Collado replaced Doe 3, and Hall, Walsh and Kaszovitz were newly-added Defendants. Accordingly, Plaintiff's claims against these Defendants are timely only if the First Amended Complaint relates back to the original complaint.

4

The Complaint does not relate back under Rule 15(c).  Two provisions in Rule 15(c) are applicable.  Under Rule 15(c)(1)(C), an amended pleading that "changes the party or the naming of the party against whom a claim is asserted" relates back to the date of the original pleading if the claim asserted against that party arises out of the same "conduct, transaction, or occurrence" and if, within the time limit for service, the new party "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).

The last element -- whether Defendants knew or should have known that the action would have been brought against them but for a mistake -- is not met.  Plaintiff did not identify Collado, Hall, Walsh and Kaszovitz by name in the original complaint because she appears not to have known their identities.  Under controlling Second Circuit precedent, "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities."  *Sewell v. Bernardin*, 795 F.3d 337, 342 (2d Cir. 2015) (quoting *Barrow v. Wethersfield Police Dep't.*, 66 F.3d 466, 470 (2d Cir. 1995)); *accord Hogan v. Fischer*, 738 F.3d 509, 517-518 (2d Cir. 2013); *Scott v. Vill. of Spring Valley*, 577 F. App'x 81, 82-83 (2014) (summary order).  Accordingly, the claims against Collado, Hall, Walsh and Kaszovitz do not relate back under Rule 15(c)(1)(C).

Alternatively, under Rule 15(c)(1)(A), an amendment to a pleading relates back to the original pleading when "the law that provides the applicable statute of limitations allows relation back."  Fed. R. Civ. P. 15(c)(1)(A).  In applying Rule 15(c)(1)(A), courts "look to the entire *body* of limitations law that provides the applicable statute of limitations."  *Hogan*, 738 F.3d at 518.

5

For § 1983 claims, courts look to applicable state law, which in this case is § 1024 of New York Civil Practice Law and Rules. *Id.* at 517-518.  Under § 1024, a plaintiff may substitute a named party for a Doe party nunc pro tunc if the plaintiff: (1) "exercise[s] due diligence, prior to the running of the statute of limitations, to identify the defendant by name"; and (2) "describe[s] the John Doe party 'in such form as will fairly apprise the party that [he] is the intended defendant.'" *Id.* at 519 (third alteration in original) (quoting *Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99, 104 (2d Dep't 2009)).  Where, as here, nothing in the record indicates that Plaintiff exercised due diligence before the statute of limitations expired, she may not use the "John Doe" procedure in § 1024.  *See Temple v. New York Cmty. Hosp.*, 933 N.Y.S.2d 321, 322 (2d Dep't 2011) ("To make use of the 'John Doe' procedure delineated in CPLR 1024, parties must demonstrate that they have exercised due diligence . . . ." (internal quotation marks omitted)); *see also Ceara v. Deacon*, 68 F. Supp. 3d 402, 409-10 (S.D.N.Y. 2014) (finding plaintiff had met his burden of showing due diligence under § 1024); *Vasconcellos v. City of New York*, No. 12 Civ. 8445, 2014 WL 4961441, at *9 (S.D.N.Y. Oct. 2, 2014) ("[I]n order to invoke CPLR § 1024's benefits, [plaintiff] must first show that she 'exercise[d] due diligence, prior to the running of the statute of limitations, to identify the defendant[s] by name.'" (third and fourth alterations in original) (quoting *Hogan*, 738 F.3d at 519));.  Accordingly, the claims against Collado, Hall, Walsh and Kaszovitz are time barred.

Plaintiff asserts that the claims against these Defendants are not time barred because the incidents were "all part of a single continuing tort" and therefore the accrual date for all claims is the date of the last incident alleged, which is July 31, 2012.  The "continuing violation doctrine is an 'exception to the normal knew-or-should-have known accrual date'" for § 1983 claims.

*Shomo*, 579 F.3d at 181 (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)). This doctrine "applies to claims 'composed of a series of separate acts that collectively constitute one lawful . . . practice.'" *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004)). "The continuing violation doctrine thus applies not to discrete unlawful acts . . . ." *Id.* The continuing violation doctrine does not apply to claims against Collado, Hall, Walsh and Kaszovitch -- brought in their individual capacities -- as the claims arise out of discrete acts, not continuing violations. In particular, the claims against Collado, Hall and Walsh are based only on the September 2011 Incident, and the claims against Kaszovitz are based only on the January 2012 Incident. Accordingly, this argument fails.

### B.       Whether the Videos May Be Considered on Motion to Dismiss

Defendants improperly base their motions on five video clips that are outside the pleadings (the "New Videos").[3] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Even if a document is "integral" to a complaint, a plaintiff's reliance on the material "is a necessary prerequisite to the court's consideration of the document on a dismissal motion." *Chambers*, 282 F.3d at 153. The New Videos are neither referenced in, nor integral to, the Complaint. Plaintiff describes them as "previously-undisclosed evidence." As Plaintiff had not seen the New Videos

---

[3]     Defendants also rely on two video clips that are incorporated into the Complaint and attached as an exhibit to the Complaint. These two clips are considered as part of this motion.

7

before Defendants filed them on this motion, much less relied on them in the Complaint, the New Videos cannot be considered in deciding this motion.

This holding is consistent with recent cases in this district that have addressed video evidence at the motion to dismiss stage. *See, e.g.*, *Gersbacher v. City of New York*, --- F. Supp. 3d ----, 2015 WL 5692178, at *3-5 (S.D.N.Y. Sept. 25, 2015) (declining to consider video offered by Defendants in support of its motion to dismiss in a § 1983 case arising out of Occupy Wall Street movement); *Pluma v. City of New York*, No. 13 Civ. 2017, 2015 WL 1623828, at *3 (S.D.N.Y. Mar. 31, 2015) (same). The cases cited by Defendants are not to the contrary. *See, e.g.*, *Garcia v. Does*, 779 F.3d 84, 87 n.2 (2d Cir. 2015) (stating that no party contested the inclusion of the video in the court's review of the complaint and declining to determine whether videos could be "written instruments" under Rule 10(c)); *Marcavage v. City of New York*, 689 F.3d 98, 110 (2d Cir. 2012) (summary judgment); *Faruki v. City of New York*, No. 10 Civ. 9614, 2012 WL 1085533, at *1 (S.D.N.Y. Mar. 30, 2012) (summary judgment).

Defendants counter that the New Videos may be considered because they contradict the Complaint's factual allegations. This argument is incorrect. It is no more proper to consider the New Videos on this motion than any other type of evidence a defendant might unilaterally proffer from outside the pleadings. The fact that evidence is inconsistent with a complaint's allegation is not a reason to consider it on a motion to dismiss. *See DiFolco*, 622 F.3d at 113 (finding district court erred in considering document that purportedly undermined a plaintiff's breach of contract claim where that document was neither incorporated in nor integral to the complaint). When presented with materials outside the pleadings on a motion to dismiss, a court must either exclude the extrinsic documents or convert the motion to one for summary judgment.

*Chambers*, 282 F.3d at 154.  Before converting a motion to dismiss into a motion for summary judgment, a court must "give 'sufficient notice to an opposing party and an opportunity for that party to respond.'" *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quoting *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995)); *see also* Fed. R. Civ. P. 12(d).  Here, this motion to dismiss will not be converted to one for summary judgment as Plaintiff has not had the opportunity to obtain discovery about the videos and question their accuracy.

Defendants argue that, where a plaintiff relies on a partial or incomplete version of a document, a court may consider the full document in deciding a motion to dismiss.  This proposition is inapplicable here because at least three of the five New Videos are different from -- and are not longer, more complete versions of -- the videos attached to the Complaint.  Furthermore, the authenticity and accuracy of the New Videos have not been established or conceded.  A motion to dismiss is not the proper time to consider such evidentiary issues.  *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) ("[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.").  For these reasons, the New Videos are not considered in deciding this motion.

### C. False Arrest Claims for September 2011 and June 2012 Incidents

Defendants move to dismiss the false arrest claims arising only out of the September 2011 and June 2012 Incidents for failure to state a claim.  In support, Defendants assert that there was probable cause for the arrests.  As this argument is based entirely on the New Videos, it is rejected.  The New Videos are not properly considered on this motion as discussed above.

Defendants involved in the September 2011 and June 2012 Incidents assert that they are

entitled to qualified immunity. They are not entitled to qualified immunity at this stage. "A defendant is entitled to qualified immunity if he can establish (1) that the complaint fails to plausibly plead that the defendant personally violated the plaintiff's constitutional rights, or (2) that the right was not clearly established at the time in question." *Turkmen v. Hasty*, 789 F.3d 218, 246 (2d Cir. 2015). District courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). "To determine whether the relevant law was clearly established, [courts] consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1842 (2015). When neither the Supreme Court nor the Second Circuit has decided an issue, a court "may nonetheless treat the law as clearly established if decisions from . . . other circuits 'clearly foreshadow a particular ruling on the issue.'" *Id.* (quoting *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010)).

Here, the Defendants involved in the September 2011 and June 2012 Incidents assert they are entitled to qualified immunity based on arguable probable cause. "An officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had 'arguable probable cause' to arrest the plaintiff." *Garcia*, 779 F.3d at 92 (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013)). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quoting *Zalaski*, 723 F.3d at 390). Defendants rely entirely on the New Videos for the proposition that

the Plaintiff and other protesters deliberately disobeyed commands from police officers and therefore Defendants had arguable probable cause for Plaintiff's arrest.  Defendants cite nothing in the pleadings to support a finding of qualified immunity.  Accordingly, this argument is premature.

    **D.**  **First Amendment Claims**

The Complaint alleges that Defendants retaliated against Plaintiff for: (1) participating in and videotaping police officers during the protests on September 24, 2011, January 1, 2012, and June 17, 2012; and (2) videotaping a police officer on July 31, 2012.  Defendants argue that Plaintiff has failed to state any valid retaliation claims under the First Amendment or, alternatively, that they are entitled to qualified immunity on those claims.  The motion to dismiss the First Amendment claims is denied as to the September 2011, January 2012 and June 2012 Incidents, but is granted as to the July 2012 Incident.

    **1.**  **The September 2011, January 2012 and June 2012 Incidents**

With respect to the September 2011, January 2012 and June 2012 Incidents, the Complaint sufficiently alleges a First Amendment claim.  "To state a First Amendment retaliation claim sufficient to withstand a motion to dismiss, a plaintiff must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"  *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir. 2009)).

The Complaint pleads all three elements for each of these incidents as it alleges that Plaintiff was "engaged in peaceful . . . protest activity" and "express[ing] political opinions

11

verbally and by her physical presence" during all three incidents.  The Complaint further asserts that, as to each of these incidents, Plaintiff was arrested because of her participation in these demonstrations.  Accordingly, the Complaint states a First Amendment claim.

In arguing for a contrary result, Defendants make two arguments.  First, they assert that probable cause is a complete defense.  For the reasons discussed above, this argument fails as the Complaint sufficiently alleges lack of probable cause, and Defendants' arguments to the contrary depend on the excluded videos.  Second, Defendants claim qualified immunity, asserting there is no clearly established right to record police officers.  The Complaint, however, does not limit the First Amendment claims for these three incidents to videotaping police officers and raises First Amendment claims stemming from Plaintiff's participation in the political protests.  Individuals have an established First Amendment right to engage in protest activities.  "The Supreme Court has declared that the First Amendment protects political demonstrations and protests—activities at the heart of what the Bill of Rights was designed to safeguard." *Jones v. Parmley*, 465 F.3d 46, 56 (2d Cir. 2006).  "[T]he police may not interfere with demonstrations unless there is a 'clear and present danger' of riot, imminent violence, interference with traffic or other immediate threat to public safety." *Id.* at 57.  As nothing in the Complaint suggests a clear and present danger of immediate harm or violence at the time Plaintiff was arrested, the Complaint sufficiently alleges that Defendants involved in these three incidents violated the clearly established constitutional right to protest.  Accordingly, Defendants involved in the September 2011, January 2012 and June 2012 Incidents are not entitled to qualified immunity at this stage.

        **2.**     **The July 2012 Incident**

The Complaint asserts that Defendant Officer Medina retaliated against Plaintiff for

observing and recording his police activities by arresting Plaintiff and damaging a poster in her possession.  Officer Medina is entitled to qualified immunity on this First Amendment retaliation claim as there was no clearly established right to publicly record police officers at the time of the arrest.

In July 2012, when Plaintiff was arrested, neither the Supreme Court nor the Second Circuit had directly addressed the constitutionality of recording officers engaged in official conduct.  *See Mesa v. City of New York*, No. 09 Civ. 10464, 2013 WL 31002, at *25 (S.D.N.Y. Jan. 3, 2013) (stating that "the right to photograph and record police is not clearly established as a matter of constitutional law in this Circuit").  As of July 2012, the First, Seventh, Ninth and Eleventh Circuits had concluded that the right exists, but the Third and Fourth Circuits had determined that the right was not clearly established.  *Id.* at *23-25 (collecting cases).  In particular, the Third Circuit stated that the First Amendment right to record matters of public concern is far from absolute and does not clearly establish the right to videotape police officers during a traffic stop.  *Kelly v. Borough of Carlisle*, 622 F.3d 248, 262-63 (3d Cir. 2010).  The Fourth Circuit affirmed a district court's determination that the "First Amendment right to record police activities on public property was not clearly established . . . ." *Szymecki v. Houck*, 353 F. App'x 852, 853 (4th Cir. 2009) (per curiam).  For these reasons, in July 2012, there was no clearly established right in this Circuit to videotape police officers.  *See Ortiz v. City of New York*, No. 11 Civ. 7919, 2013 WL 5339156, at *4 (S.D.N.Y. Sept. 24, 2013) (finding defendants were entitled to qualified immunity because there was no clearly established right to record police officers performing their official duties); *Mesa*, 2013 WL 31002 at *24-25 (same).  *But see Higginbotham v. City of New York*, --- F. Supp. 3d ----, 2015 WL 2212242, at *9 (S.D.N.Y.

May 12, 2015) (concluding that "the right to record police activity in public, at least in the case of a journalist who is otherwise unconnected to the events recorded, was in fact 'clearly established'"). Accordingly, Officer Medina is entitled to qualified immunity on the First Amendment claim against him.

In seeking a contrary result, Plaintiff asserts that Defendants are "estopped" from asserting the lack of a clearly established right based on a stipulation and order that the City and NYPD signed in 1977 in a separate case, *Black v. Codd*, No. 73 Civ. 5283. In particular, Plaintiff asserts that the City and NYPD stipulated that there is no probable cause to arrest an onlooker for taking photographs except in specified circumstances not present here. Assuming without deciding that the stipulation is applicable here, whether or not there is probable cause is not determinative of whether Defendants' conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Drimal v. Tai*, 786 F.3d 219, 224-25 (2d Cir. 2015). Accordingly, this argument fails.

### E. Excessive Force Claims

The Complaint asserts § 1983 claims for excessive force, which are considered under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 388 (1989). These claims fall into two categories: (1) excessive physical force in seizing and arresting Plaintiff during the September 2011, January 2012 and July 2012 Incidents; and (2) excessive force in handcuffing Plaintiff in September 2011 and June 2012. The excessive force claims are dismissed for failure to state a claim.

To prevail, a plaintiff must show that the defendants' use of force was objectively unreasonable "in light of the facts and circumstances confronting them, without regard to their

underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 387 (1989). In determining whether the force used in a given arrest is reasonable, courts pay "careful attention to the facts and circumstances of each particular case . . . ." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. at 396). The reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

With respect to the amount of physical force used, the Complaint does not support an inference that Defendants' actions were objectively unreasonable. Although the focus of an excessive force claim is on the defendant, the "extent of injury suffered by [a plaintiff] is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.3d 1028, 1033 (2d Cir. 1973)). "Courts in this District have routinely dismissed excessive force claims where the plaintiff alleged that he was thrown to the ground, but did not allege any physical injuries." *Higginbotham*, 2015 WL 2212242, at *5.

The Complaint alleges that the Defendant Doe 2 pulled down on the back of a sports bra in an effort to seize Plaintiff and that Defendants Collado and Doe 4 attempted to push Plaintiff to the ground, but the Complaint does not allege any resulting injury. The Complaint also states that, in January 2012, Defendants Gonzalez and Mascari "slammed" Plaintiff into a wall in their attempt to arrest her, but alleges in only a conclusory fashion her resulting "discomfort, physical

15

and emotional pain and distress, including humiliation, fear, frustration, and anger." Similarly, the Complaint asserts that, in the process of arresting Plaintiff in July 2012, Defendant Medina "tore a poster in her possession." These allegations do not amount to objectively unreasonable force and do not state a claim for excessive force.

The claims arising out of the use of handcuffs are also dismissed for failure to state a claim. In evaluating the reasonableness of handcuffing, a court considers: (1) whether the handcuffs were unreasonably tight; (2) whether the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists. *Lynch ex rel. Lynch v. City of Mount Vernon,* 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008). District courts in this Circuit reflect a consensus that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort and bruising. *See Higginbotham*, 2015 WL 2212242, at *6 (collecting cases); *Corsini v. Bloomberg*, 26 F. Supp. 3d 230, 243 (S.D.N.Y. 2014) (dismissing excessive force claim because allegation that "handcuffs were too tight and that [plaintiff] suffered 'physical injury,' without specifying any factual content about the injury" was "conclusory"); *Chevalier v. City of New York*, No. 11 Civ. 1511, 2011 WL 4831197, at *3 (S.D.N.Y. Oct. 12, 2011) (dismissing excessive force claim where neither request to loosen handcuffs nor injuries were alleged).

The Complaint alleges that, on September 24, 2011, Plaintiff was placed in tight handcuffs for fifteen minutes and that they were removed after she complained. The Complaint asserts that, in June 2012, Plaintiff was placed in tight handcuffs for 35 minutes and contains no allegations that Plaintiff complained to Defendants or anyone else that her handcuffs were too tight. The Complaint makes no specific allegations about injuries from the tight handcuffs for

16

these incidents.  Accordingly, these allegations do not state a claim for excessive force.

>   **F.**     *Monell* **Claim**

The Complaint's claim of municipal liability is dismissed for failure to state a claim.  A municipality can be held liable under § 1983 only if a plaintiff's injury is the result of municipal policy, custom or practice.  *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  It is "not vicariously liable under § 1983 for [its] employees' actions."  *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1359 (2011).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Id.*  The "mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."  *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

   The Complaint alleges that the City maintained an improper policy, custom or practice of permitting police officers to make false arrests of persons engaged in public protest; failing to discipline police officers engaged in misconduct; and permitting police officers who engage in arrests and use of force to conceal their identity.  For factual support, the Complaint cites a report by several law school clinics entitled "Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street," July 25, 2012, (the "Report") and allegations in two unrelated actions filed in this District.

The Complaint does not adequately plead the existence of a municipal policy, custom or practice.  Of the two cases cited in the Complaint, one settled without a decision on the merits,

and in the second case, the *Monell* claim was dismissed on the merits.  While the Report cites a number of incidents that it states "raise concerns" about excessive or unnecessary use of force, even multiple incidents of misconduct do not without more lead to a plausible inference that the City had adopted a policy of suppressing public protest.  *See Smith v. Martuscello*, 602 F. App'x 550, 552 (2d Cir. 2015) (summary order) ("Though [plaintiff's] amended complaint contains allegations of widespread abuse . . . , it contains no allegations that the abuse was the result of a policy or custom of deliberate indifference to inmate abuse."); *Webb v. Goord*, 340 F.3d 105, 109 (2d Cir. 2003) (stating that allegations of "forty discrete incidents of misconduct" did not establish the existence of a policy or practice).

      The Complaint lacks allegations of context that might give rise to such an inference.  For instance, the Complaint does not allege facts to suggest that purported attempts to thwart protests or protestors were pervasive in light of the universe of demonstrations and protests.  Nor does the Complaint allege whether or how many of these incidents were found to be unlawful.  The Complaint provides no factual support for its assertion that the City had a policy of hiding police officers' identities.  Accordingly, the Complaint fails to allege facts raising a plausible inference that the policy or practice underlying the *Monell* claim existed.

      The Complaint also asserts in a conclusory fashion a "deliberate indifference to proper training, supervising and/or disciplining."  It contains no factual allegations to support this assertion and therefore does not allege a viable *Monell* claim.  *See Simms v. City of New York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012) (summary order) ("While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, . . . this does not relieve them of their obligation under *Iqbal* to plead a facially

plausible claim."); *Simms v. City of New York,* No. 10 Civ. 3420, 2011 WL 4543051, at *2 n. 3 (E.D.N.Y. Sept. 28, 2011) ("Since [*Iqbal* and *Twombly* ], courts in this district have generally required that plaintiffs provide more than a simple recitation of their theory of liability, even if that theory is based on a failure to train.").

Because the Complaint fails to plead adequately municipal liability under § 1983 pursuant to *Monell,* the City is dismissed as to all § 1983 claims.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED in part and DENIED in part as follows:

- GRANTED as to Defendants City of New York, Collado, Hall, Walsh and Kaszovitz, who are dismissed from the case;
- GRANTED as to Plaintiff's excessive force claims;
- GRANTED as to Plaintiff's First Amendment claim arising out of the July 2012 Incident;
- DENIED as to Plaintiff's false arrest claims arising out of the September 2011 and June 2012 Incidents; and
- DENIED as to Plaintiff's First Amendment claims arising out of the September 2011, January 2012 and June 2012 Incidents.

The Clerk of Court is directed to terminate Defendants City of New York, Collado, Hall, Walsh and Kaszovitz from this case and close Dkt. No. 48.

SO ORDERED.

Dated: November 9, 2015
New York, New York

19     _____
         **LORNA G. SCHOFIELD**
         **UNITED STATES DISTRICT JUDGE**